# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH WARD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 18-0435-WS-M |
| | ) |
| BOSTON SCIENTIFIC CORPORATION, *et al.*, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter comes before the Court on plaintiff's Motion to Remand (doc. 11). The Motion has been briefed and is now ripe.

**I.  Background.**

Plaintiff, Joseph Ward, filed this products liability action against Boston Scientific Corporation and various fictitious defendants in Mobile County Circuit Court on August 31, 2018. Ward's claims relate to a stent that Boston Scientific purportedly designed, manufactured, and distributed. According to the well-pleaded factual allegations of the Complaint, a Boston Scientific stent was surgically implanted in Ward's heart in 2009. (Doc. 1, ¶¶ 2, 7.) The Complaint further alleges that Ward suffered a heart attack in January 2017 because that stent failed, necessitating that he undergo surgery to have a new stent implanted. (*Id.*, ¶ 8.) On that basis, plaintiff brings purely state-law claims against Boston Scientific, on the following theories: (i) negligence / gross negligence / wantonness (Boston Scientific negligently and wantonly developed, designed, manufactured and sold a defective stent); (ii) products liability under the AEMLD (the stent was defective and unreasonably dangerous when it left Boston Scientific's control); and (iii) breach of express and implied warranty (stent was unmerchantable, unfit for its ordinary purposes, and was constructed in a manner that rendered it unreasonably dangerous). The Complaint does not purport to assert any federal claims or causes of action against Boston Scientific; rather, Ward's claims sound exclusively in Alabama law.

The Complaint does not enumerate the amount of damages Ward seeks. In the *ad damnum* clause for each cause of action, plaintif simply demands judgment "in an amount of compensatory and punitive damages that exceeds the jurisdictional limits of" the Alabama circuit court. (Doc. 1-1, at 5, 6, 8.)[1] His pleading elaborates that because of Boston Scientific's acts and omissions, Ward "has sustained and will continue to sustain severe and debilitating injuries, serious bodily injury, mental and physical pain and suffering and has incurred economic loss." (*Id.*, ¶¶ 17, 25, 33.)

On October 9, 2018, Boston Scientific filed a Notice of Removal (doc. 1) removing this action to this District Court. In so doing, defendant predicates federal subject matter jurisdiction on the diversity provisions of 28 U.S.C. § 1332. To establish complete diversity of citizenship, Boston Scientific relies on the Complaint's allegations showing that Ward is a citizen of Alabama and that Boston Scientific is incorporated in and has its principal place of business in Massachusetts, rendering it a citizen of Massachusetts for diversity purposes. (Doc. 1-1, ¶¶ 2-3.)[2] As for the amount-in-controversy prong of § 1332 jurisdiction, Boston Scientific contends that it is facially apparent from the Complaint that the amount in controversy exceeds the jurisdictional minimum of $75,000, exclusive of interest and costs. (Doc. 1, ¶ 7.) Plaintiff proceeded to file a Motion to Remand, challenging that notion and arguing that the amount-in-controversy threshold is not satisfied, such that federal jurisdiction is lacking and this action must be remanded to state court.

**II.     Analysis.**

"For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000." *Underwriters at Lloyd's, London v. Osting-*

---

[1] Under Alabama law, circuit courts have exclusive original jurisdiction of all civil actions in which the matter in controversy exceeds $10,000, exclusive of interest and costs. *See* Ala. Code § 12-11-30(1).

[2] In its Notice of Removal, Boston Scientific clarifies that it is actually a Delaware corporation, not a Massachusetts corporation; therefore, it is properly deemed a citizen of both Delaware and Massachusetts for diversity purposes. (Doc. 1, ¶ 5.) This correction does not alter the diversity analysis. Indeed, Ward is an Alabama citizen and Boston Scientific unequivocally alleges (and there is no record information to the contrary) that it is not now, and was not at the time of the Complaint's filing, a citizen of Alabama. (*Id.*) Accordingly, complete diversity of citizenship is present here.

*Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) (citations omitted). As the party invoking federal jurisdiction, Boston Scientific bears the burden of satisfying the requirements of § 1332, including the requisite amount in controversy, by a preponderance of the evidence. *See Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014) ("We have repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum."). To meet this burden, Boston Scientific is "not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Rather, the necessary jurisdictional showing is either that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum," or that there is "additional evidence demonstrating that removal is proper." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

In removing this action to federal court, Boston Scientific relies on the former approach by maintaining that it is facially apparent from the allegations of Ward's Complaint that the amount in controversy exceeds $75,000. Defendant observes that, while the Complaint does not quantify the damages sought, it alleges that "Plaintiff had a heart attack because the Stent failed" and that he underwent a surgical procedure in January 2017 for implantation of a new stent. (Doc. 1-1, ¶ 8.) The Complaint further alleges that because of Boston Scientific's wrongful conduct concerning the stent, Ward "has sustained and will continue to sustain severe and debilitating injuries, serious bodily injury, mental and physical pain and suffering and has incurred economic loss." (*Id.*, ¶ 17.) Plaintiff demands compensatory and punitive damages.

Taken at face value, Ward's claims are that Boston Scientific's negligent, reckless, and malicious conduct in designing, manufacturing and marketing a defective stent caused him to suffer cardiac arrest and undergo an interventional procedure to have a new stent implanted. Ward further claims that he sustained "severe and debilitating injuries" resulting from Boston Scientific's wrongdoing, including "serious bodily injury" and pain and suffering. The Court agrees with defendant that it is facially apparent from these allegations (and the accompanying demand for compensatory and punitive damages) that the amount in controversy exceeds the jurisdictional threshold. Where, as here, a plaintiff claims that a corporate defendant's recklessness and negligence in designing and distributing a defective medical device subjected him to a life-threatening medical emergency and necessitated surgery to replace that product, and

where that plaintiff claims to have sustained severe and debilitating injuries for which he seeks compensatory and punitive damages, logic, common sense and judicial experience all lead inexorably to the conclusion that the amount in controversy more likely than not exceeds $75,000. *See, e.g., Roe*, 613 F.3d at 1064 ("when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate"). After all, "[t]he law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Pretka*, 608 F.3d at 754. To be sure, the $75,000 threshold cannot be deemed satisfied through mere "conjecture, speculation, or star gazing." *Id.* But the Eleventh Circuit has explained that "viewing facts through the lens of common sense is not star gazing," and has emphasized that district courts need not "suspend reality or shelve common sense" in evaluating whether a pleading establishes the jurisdictional amount on its face. *Id.* at 770; *see also Roe*, 613 F.3d at 1062 (confirming that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements"). The factual allegations in Ward's Complaint show that Ward seeks to recover for serious injuries and invasive medical procedures occasioned by Boston Scientific's allegedly tortious conduct in selling him a bad stent. Viewed through the lens of judicial experience and common sense, these allegations readily establish that the amount in controversy more likely than not exceeds the jurisdictional minimum under 28 U.S.C. § 1332. Nothing more is required of the removing defendant to shoulder its burden on this element. *See, e.g., South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014) ("Estimating the amount in controversy is not nuclear science; it does not demand decimal-point precision.").

Ward offers several arguments to the contrary in support of his Motion to Remand; however, none are persuasive. First, plaintiff contends that because Boston's Scientific's position is that all of his claims are preempted by the Medical Device Amendment to the Food Drug and Cosmetic Act, "the amount in controversy was zero on the date Plaintiff filed his Complaint." (Doc. 11, at 1-2.) This argument fails as a matter of law. Whether Boston Scientific has a meritorious defense to Ward's claims is of no consequence for purposes of assessing the amount in controversy. It is well settled that "the pertinent question at the jurisdictional stage is what is *in controversy* in the case, not how much the plaintiffs are

-4-

ultimately likely to recover." *South Florida Wellness*, 745 F.3d at 1318 (citations and internal parentheses omitted).³ The Court therefore rejects plaintiff's contention that Boston Scientific's potentially viable preemption defense reduces the amount in controversy to $0 (or, for that matter, affects the amount in controversy at all) for jurisdictional purposes.

Second, Ward advances a conclusory assertion that "Defendant cannot otherwise meet its burden of proof that the amount in controversy exceeds $75,000." (Doc. 11, at 5.) As discussed above, however, the Court is not obligated to cast aside its common sense and judicial experience in evaluating the amount reasonably in controversy in an indeterminate-damages complaint. Plaintiff offers neither argument nor authority for the proposition that his claims to recover compensatory and punitive damages for a defective product that he says caused him to suffer cardiac arrest, undergo surgical intervention, and otherwise endure severe and debilitating bodily injury, pain and suffering are more likely than not valued below $75,000. Given the nature and severity of the injuries identified in Ward's Complaint, the Court remains of the opinion that, in accordance with the principles and guidance issued by the Eleventh Circuit, it is facially apparent from such Complaint that the amount in controversy exceeds the jurisdictional minimum.⁴

---

³ *See also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) ("The amount in controversy is not a prospective assessment of a defendant's liability. … Rather, it is the amount at stake in the underlying litigation.") (citations and internal marks omitted); *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) ("A removing defendant need not confess liability in order to show that the controversy exceeds the threshold.") (citations and internal quotation marks omitted); *Robertson v, Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) ("The required demonstration concerns what the plaintiff is claiming …, not whether the plaintiff is likely to win or be awarded everything he seeks.") (citations and internal quotation marks omitted); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").

⁴ In disputing this conclusion, Ward likens his case to *Thompson v. Ortensie*, 2017 WL 4772741 (S.D. Ala. Oct. 23, 2017), which this Court remanded to state court for lack of proof of the amount in controversy. The analogy is ill-suited. *Thompson* involved an automobile accident in which the plaintiff's pleading contained no information whatsoever about his injuries or medical treatment. *See id.* at *1 ("The Complaint does not characterize the nature, degree or severity of Thompson's past, present or future physical injuries, medical treatment or expenses."). As such, it was not possible from the face of the pleading to make any meaningful assessment of the amount in controversy. By contrast, Ward's Complaint provides critical (albeit limited) insight into the nature, degree and severity of his physical injuries and medical
(Continued)

Third, at the conclusion of his Reply, Ward announces for the first time that "Plaintiff will gladly settle this case right now for the sum of $70,000, which should conclusively show that the amount in controversy does not exceed $75,000." (Doc. 17, at 4.) This post-removal revelation is unilluminating. As an initial matter, Ward never disclaims any intent to request or accept more than $75,000 at trial. *See, e.g., Wallace v. Kentucky Fried Chicken*, 2008 WL 4531773, *6 n.13 (S.D. Ala. Oct. 9, 2008) (for amount-in-controversy purposes, "courts in the Eleventh Circuit credit representations of counsel that their clients **will neither seek nor accept recovery exceeding the jurisdictional amount**") (emphasis added). Moreover, post-removal settlement offers advanced to thwart federal jurisdiction are not accorded determinative weight in the jurisdictional analysis. *See generally Nationwide Property and Cas. Ins. Co. v. Dubose*, 180 F. Supp.3d 1068, 1072 (S.D. Ala. 2016) ("the utility of such demands in the jurisdictional analysis varies widely depending on the circumstances"). And of course, amount in controversy is properly evaluated at the time of removal, without regard to post-removal concessions offered in the context of litigating a motion to remand. *See Pretka*, 608 F.3d at 751 ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later."). There is no evidence or information before the Court suggesting that Ward ever communicated to Boston Scientific prior to removal a willingness to settle this case for less than $75,000. By all appearances, Ward's strategic settlement demand of $70,000, as

---

treatment, from which reasonable inferences – grounded in judicial experience and common sense – may be drawn as to the amount in controversy between the parties. Equally unavailing is plaintiff's attempt to rebut defendant's legal argument by stating that Boston Scientific "fails to discuss any opinion from the Southern District of Alabama." (Doc. 17, at 2.) The relevant principles to be applied in the § 1332 amount-in-controversy analysis are derived from binding appellate authorities, such that it is unnecessary for Boston Scientific to identify a case squarely on point from this judicial district. Finally, Ward correctly observes that the mere fact that a plaintiff demands punitive damages does not automatically render the § 1332 amount-in-controversy requirement satisfied. *See, e.g., Crocker v. LifeSouth Community Blood Centers, Inc.*, 2016 WL 740296, *3 (S.D. Ala. Feb. 23, 2016) ("a claim for punitive damages in a negligence / wantonness case does not automatically, necessarily vault the amount in controversy over the § 1332 jurisdictional threshold"). As discussed above, however, the Court's determination that defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000 is not a kneejerk reaction to Ward's claim for punitive damages; rather, the listing of this category of damages in the *ad damnum* clause is simply one of many factors weighing into the jurisdictional calculus.

communicated for the first time via his Reply in support of the Motion to Remand, is not a meaningful indicator of the amount in controversy between the parties when this action was removed to federal court; therefore, it is entitled to no weight in the jurisdictional analysis.

**III.    Conclusion.**

For all of the foregoing reasons, the Court finds that the amount in controversy at the time of removal more likely than not exceeded the $75,000 threshold, such that federal diversity jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332. Plaintiff's Motion to Remand (doc. 11) is **denied**.

DONE and ORDERED this 19th day of December, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE